FILED
CLERK
11:38 am, Sep 24, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In the Matter of the Complaint of MARK PAV
and JOSEPH WISSLER, as Owners of a 1998,
24-foot Chaparral 2335, for Exoneration from or
Limitation of Liability,

                              Petitioners.
-----------------------------------------------------------------X
FEUERSTEIN, J.

**OPINION & ORDER
17-CV-1113 (SJF)(GRB)**

       On February 27, 2017, petitioners Mark Pav ("Pav") and Joseph Wissler (collectively, "petitioners"), as owners of a 1998, twenty-four (24)-foot Chaparral 2335 (the "Vessel"), commenced this action pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.*, and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rule F"), for exoneration from or limitation of liability for all claims and/or losses arising out of a collision between two (2) vessels while on navigable waters of the United States, in the Great South Bay in the vicinity of Lindenhurst, New York, on July 20, 2014 (the "Accident").

       On March 1, 2017, this Court issued an order (the "Order Restraining Suits"), *inter alia*, (i) directing (A) that the Clerk of the Court issue a Notice "to all persons asserting claims or suits with respect to which the Complaint seeks Exoneration from or Limitation of Liability admonishing them to file their respective claims with the Clerk of this Court, in writing, and to serve on the attorneys for the Petitioners a copy thereof, on or before the 17th day of April, 2017, or be defaulted; and that if any claimant desires to contest either the right to Exoneration from or the right to Limitation of Liability, such claimant shall file and serve on the attorneys for the Petitioners . . . an Answer to the Complaint on or before the said date, unless the claim has included an Answer to the Complaint, so designated, or be defaulted[,]" (Docket Entry ["DE"] 4

1

at p. 2) (emphasis omitted), and (B) that the Notice be published in the Suffolk Times, a weekly newspaper, once a week for four (4) successive weeks before the return date thereof, and copies of the Notice be mailed by petitioners to "every person known to have any claim against the Vessel or Petitioners, or to their attorneys," (*id.* at p. 3); and (ii) restraining, staying and enjoining "the further prosecution of any and all actions, suits and proceedings already commenced and the commencement or prosecution [t]hereafter of any and all suits, actions, or proceedings of any nature and description whatsoever in any Court . . . against the Petitioners, . . . and/or the Vessel, and the taking of any steps and the making of any motion in such actions, suits or proceedings except in this action, to recover damages for or in respect to the aforesaid alleged [A]ccident . . . until the hearing and determination of this action. . . ." (*Id.*) As a result, a personal injury action commenced by Roldando Moreno ("Moreno") against Pav in the Supreme Court of the State of New York, County of Suffolk ("the state court"), on or about September 23, 2016, which Pav removed to this Court pursuant to 28 U.S.C. §§ 1333, 1441 and 1446, on October 20, 2016, *Moreno v. Pav,* No. 16-cv-5865 ("the underlying action"), was stayed pending a determination of this action.[1]

On March 9, 2017, the Clerk of the Court issued the "Notice of Complaint for Exoneration from or Limitation of Liability" (the "Notice") providing, *inter alia*, (i) that "all persons, firms, entities or corporations, having any claim or suit against Petitioners arising or resulting from the [A]ccident must file a Claim as provided in [Supplemental Rule F], with the Clerk of the Court, . . . and must deliver or mail to the attorneys for the Petitioners, . . . a copy on

---

[1] During an initial pretrial conference in the underlying action on December 13, 2016, *i.e.*, prior to the commencement of this admiralty action, *inter alia*, the Court set July 14, 2017 as the deadline for the completion of all discovery in that action. Thus, the parties were given seven (7) months to complete discovery in the underlying action. The minute entry for proceedings held before the Honorable Gary R. Brown, United States Magistrate Judge, in the underlying action on March 1, 2017, *i.e.*, approximately three (3) months later, indicates, *inter alia*, that the parties were "handling discovery without issue." Approximately one (1) week later, the Court entered the Order Restraining Suits.

or before the 17th day of April, 2017 or be defaulted[;]" and (ii) that "any claimant desiring to contest Petitioners' right either to Exoneration from or Limitation of Liability shall file an Answer to the Complaint on or before the aforesaid date as required by Supplemental Rule 'F' of the Federal Rules of Civil Procedure, and deliver or mail a copy to the attorneys for the Petitioners, or be defaulted." (DE 5). Petitioners served notice of entry of the complaint, the Order Restraining Suits and the Notice upon counsel for Moreno, *i.e.*, the plaintiff in the underlying action and the only known potential claimant in this action, on or about March 13, 2017. (*See* Petitioners' Motion for Default ["Default Mot."], Ex. B [DE 8-2]). In addition, the Notice was published in the Suffolk Times once a week for four (4) weeks, commencing on March 30, 2017. (*Id.*, Ex. C [DE 8-3]).

During an initial pretrial conference before this Court on May 18, 2017, at which Charles Teixeira, Esq., appeared on behalf of Moreno, (*see* DE 6), *inter alia*, the Court granted Moreno a forty-five (45) day extension of time, *i.e.*, until July 2, 2017, to file and serve a claim and answer to the complaint herein, and scheduled a status conference for July 12, 2017. Although Moreno filed an "Answer to Plaintiff's Complaint for Exoneration from or Limitation of Liability" in the underlying action on July 2, 2017, asserting, *inter alia*, seven (7) affirmative defenses[2], that answer did not assert a claim or counterclaim against petitioners. (*See* DE 9 in No. 16-cv-5865)[3]. Moreno never filed a claim, and never filed an answer in this action.

---

[2] The affirmative defenses are numbered "First" through "Eighth," but the answer omits a sixth affirmative defense. (DE 9 in No. 16-cv-5865).

[3] Although Moreno attempts to attribute the incorrect filing of the answer in the underlying case to "an attorney[] who is no longer with the firm," (Moreno's Memorandum of Law in Support of Motion to Vacate Default Judgment ["Moreno Mem."] at p. 6), the docket in the underlying action indicates that the answer was electronically filed by Joseph Dell, Esq., a principal of Dell & Dean, PLLC ("D&D"), counsel of record for Moreno. (DE 9 in No. 16-cv-5865). The answer was electronically signed by Michael C. O'Malley, Esq. (*Id.*).

3

During the status conference before this Court on July 12, 2017, at which Christopher Dean, Esq., a principal of D&D, appeared on behalf of Moreno, (*see* DE 7), *inter alia*, petitioners' counsel raised the issue of Moreno's default in this action, *i.e.*, his failure to file a claim and answer in this action, and the Court set a briefing schedule for petitioners to move for a default judgment against him, requiring the motion to be served by July 20, 2017; any opposition to be served by July 31, 2017; and any reply to be served, and the motion filed, by August 10, 2017.[4] Although petitioners served and filed a motion in accordance with that briefing schedule, (*see* DE 8 and 9-1 [Ex. A]), Moreno never served any opposition or response thereto, nor did he ever seek an extension of time to do so; and he provides no satisfactory explanation for his failure to do so.[5]

---

[4] Contrary to Moreno's contentions in his reply brief, (i) the Court did not "grant[] [him] an extension to file opposition to Petitioners' default motion by July 31, 2017[,]" and (ii) his filing of an answer in the underlying action on July 2, 2017 did not "render[] Petitioners [sic] default motion moot." (Moreno's Reply Affirmation in Support of Motion to Vacate Default Judgment ["Reply"] at p. 6). Indeed, the briefing schedule for petitioners' default judgment motion was not entered until after Moreno's answer was filed in the underlying action. Accordingly, and since Moreno's counsel was clearly advised at the July 12, 2017 conference, *i.e.*, after the answer had been erroneously filed in the underlying action, that Moreno was in default in this action and that petitioners would be moving for the entry of a default judgment against him, counsel's purported belief that Moreno's "opposition papers were no longer necessary," (*id.* at p. 7), was not reasonable. The Court also notes that Moreno does not submit an affidavit from Mr. Dean, *i.e.*, the attorney who appeared at the July 12, 2017 conference, in support of that explanation, which was raised for the first time in Moreno's reply affirmation. Indeed, that newly advanced explanation is seemingly inconsistent with Moreno's explanation in his original memorandum of law, *i.e.*, that an unidentified attorney who is no longer associated with D&D erroneously filed the answer in the underlying case and "*[t]hereafter*, a Motion for Default was filed but as the docket reflects, there were no filings that were sent to the undersigned." (Moreno Mem. at p. 1) (emphasis added). In other words, Moreno's initial explanation for his failure to oppose petitioners' default judgment motion was that his counsel did not receive notice via ECF when the motion was filed; his later explanation is that be believed he did not have to file any opposition because the motion was moot.

[5] The initial explanation proffered by Moreno, *i.e.*, that his counsel did not receive notice via ECF when petitioners' default judgment motion was filed because D&D was not designated as his counsel of record on the docket, (Moreno Mem. at pp. 1 and 6), is disingenuous since petitioners served the motion upon him by mailing it to D&D's last known address. *See* Fed. R. Civ. P. 5(b). Moreno does not deny receipt or service of the motion, much less present any evidence contradicting petitioners' affidavit of service. (DE 9-1 [Ex. A]). In any event, Mr. Dean was advised of the briefing schedule for petitioners' default judgment motion at the July 12, 2017 status conference and, thus, knew that petitioners were required to serve the motion by July 20, 2017. A quick glance of the docket on July 21, 2017 would have revealed to Moreno's counsel that the motion had in fact been filed in accordance with the Court's briefing schedule, and he would have had ample opportunity to file any opposition thereto by the July 31, 2017 deadline set forth in the Court's briefing schedule.

By order dated January 29, 2018, this Court granted petitioners' unopposed motion pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for entry of a default judgment against Moreno and all other potential claimants in this action. On January 31, 2018, a default judgment was entered against Moreno "and any person and/or entity with any claim for injury, damage and/or loss arising or resulting from the Accident who has not filed a claim in this action by July 2, 2017," *inter alia*, barring all such persons and entities "from filing any claims in this or any other proceeding arising or resulting from the Accident, with prejudice." Moreno never filed a notice of appeal of the default judgment order or judgment.

During a status conference in the underlying action on April 12, 2018, at which Kristen Sinnott, Esq., an associate for D&D, appeared on behalf of Moreno, the Court dismissed the underlying action based upon the default judgment entered in this action. (DE 10 in 16-cv-5865).

On May 10, 2018, Moreno filed a notice of appeal of the minute order dismissing the underlying action. However, by mandate issued on September 5, 2018, the United States Court of Appeals for the Second Circuit dismissed Moreno's appeal, deeming the case in default for his failure to timely file the forms required by Local Rule 12.1(b)(1) of the Local Rules and Internal Operating Procedures of the Court of Appeals for the Second Circuit ("Local Rule 12.1").[6] (DE 12 in 16-cv-5865).

---

[6] In his reply, Moreno indicates that "the actual reason [his] appeal was dismissed was because the court informed Respondent [Moreno] because of the default that was entered in this case on January 29, 2018, [his] original action that was stayed as a result of the initiation of the amorality [sic] action was in default[;] . . . [and] instructed him to cure the default first by making the within application and then he could appeal the dismissal of the original action." (Reply at p. 7). Moreno submits no evidence in support of that assertion, and includes no details regarding who at "the court" allegedly instructed him as such; to whom "the court" purportedly spoke; when that discussion(s) occurred, etc. The mandate issued by the Second Circuit on September 5, 2018 indicates: "A notice of appeal was filed on May 10, 2018. Appellant's Form C and D were due May 24, 2018. The case is deemed in default. IT IS HEREBY ORDERED that the appeal will be dismissed effective July 9, 2018 if the forms are not filed by that date." (DE 12 in 16-cv-5865) (emphasis omitted). Subsections (a) and (b)(1) of Local Rule 12.1 require that Form C, a "Civil Appeal Pre-Argument Statement," "along with the addenda required by th[at] form;" and Form D, a "Civil Appeal Transcript Information Form," be filed in all counseled civil cases within fourteen (14) days after a notice of appeal is filed. Local Rule 12.1(d) provides that a failure to do so "may result in dismissal of the appeal." Moreover, even assuming, *arguendo*, that Moreno was instructed by the Second Circuit to make the instant motion to vacate

On January 28, 2019, *i.e.*, more than nine (9) months after Moreno's counsel clearly knew about the default judgment entered in this action, and just three (3) days before the one (1)-year deadline expired pursuant to Rule 60(c)(1) of the Federal Rules of Civil Procedure, Moreno filed the instant motion to vacate the default judgment entered in this action pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure. For the reasons set forth below, Moreno's motion is denied.

I.    BACKGROUND

The complaint alleges that on July 20, 2014, the Vessel "was traveling upon the navigable waters of the United States, on the great South Bay in the vicinity of Lindenhurst, in Suffolk County, New York, when a 2014 Yamaha personal watercraft operated by Roldando Moreno collided with the Vessel." (Complaint ["Compl."], ¶ 3).

On September 23, 2016, Moreno commenced the underlying action in the state court seeking to recover damages for personal injuries he allegedly sustained as a result of Pav's negligence, (Compl., ¶ 4), which petitioners subsequently removed to this Court pursuant to 28 U.S.C. §§ 1333, 1441 and 1446.

On February 27, 2017, petitioners commenced this action pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.*, and Supplemental Rule F, seeking exoneration from or limitation of liability for all claims and/or losses arising out of the Accident.

Pursuant to the Order Restraining Suits and the Notice issued in accordance therewith, *inter alia*, all claims or suits against petitioners "arising or resulting from the [A]ccident" were

---

the default judgment in this action, he proffers no explanation for his delay of approximately four (4) months after the mandate issued, and until only three (3) days before the one (1)-year deadline to make such a motion under Rule 60(c)(1) of the Federal Rules of Civil Procedure expired, to file the motion.

required to be filed and served in this action on or before April 17, 2017, or would "be defaulted." Petitioners caused the Notice to be published in the Suffolk Times, a weekly newspaper, once a week for four (4) weeks, commencing on March 30, 2017; and served the Notice upon counsel for Moreno, *i.e.*, the only known potential claimant in this action, in accordance with Supplemental Rule F. (*See* Default Mot., Ex. B and C).

The Court subsequently granted Moreno a forty-five (45) day extension of time, *i.e.*, until July 2, 2017, to serve and file a claim and answer in this action. Nonetheless, Moreno never filed a claim or answer in this action. Although Moreno filed an answer with affirmative defenses in the underlying action, he did not assert any claim or counterclaim against petitioners therein. In addition, Moreno, *inter alia*, never served any opposition or response to petitioners' motion for a default judgment; never sought an extension of time to do so, or to file a late claim in this action; and delayed for no less than nine (9) months from when his counsel clearly had notice that a default judgment had been entered in this action to seek any relief therefrom.

Moreno now moves to vacate the default judgment entered in this action pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure.

II. DISCUSSION

A default judgment was entered in this action because petitioners complied with all of the requirements of Supplemental Rule F, but no potential claimant, including Moreno, filed a claim against them in this action as required by Supplemental Rule F(5). *See, e.g. Matter of Complaint of Wild Florida Airboats, LLC*, No. 6:16-cv-2207-Orl-31GJK, 2017 WL 3891777, at * 3 (M.D. Fla. Aug. 29, 2017), *report and recommendation adopted*, 2017 WL 3877598 (M.D. Fla. Sept. 5, 2017) ("[I]n cases under [Supplemental Rule F], default judgment will be entered against any

7

potential claimant who has failed to respond to notice of a complaint for exoneration from or limitation of liability within the established notice period, provided that the notice complies with the rules and is: 1) sent to every person known to have made any claim against the vessel at issue; and 2) published in a newspaper once a week for four consecutive weeks prior to the date fixed for the filing of claims."); *accord In re Narod*, No. 13-cv-554, 2013 WL 3491088, at *3 (E.D.N.Y. July 10, 2013); *In re Columbia Leasing LLC*, 981 F. Supp. 2d 490, 495 (E.D. Va. 2013); *Matter of S&W Marine, Inc.*, No. 16-cv-17645, 2017 WL 2955358, at * 1 (E.D. La. Mar. 6, 2017); *In re Beauvois*, No. 2:10-cv-480-FtM-36SPC, 2010 WL 5055833, at * 3 (M.D. Fla. Dec. 3, 2010).

Rule 55(c) of the Federal Rules of Civil Procedure provides that a "court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Moreno moves to vacate the default judgment entered in this action pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure, which provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect . . . ." A motion under Rule 60(b) "must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

Although "[a] motion to vacate a default judgment is addressed to the sound discretion of the district court[,]" *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quotations and citations omitted); *accord S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998), the Second Circuit has expressed a strong "preference for resolving disputes on the merits." *Green*, 420 F.3d at 104 (quotations and citation omitted); *see also State St. Bank & Trust Co. v. Inversiones*

*Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) ("Default judgments are generally disfavored and are reserved for rare occasions. . . . As such, the criteria for vacating a default judgment pursuant to Rule 60 . . . should be construed generously." (quotations and citations omitted)). "Accordingly, in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *Green*, 420 F.3d at 104.

"When a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b), the court's determination must be guided by three principal factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting [sic] party prejudice." *State St. Bank*, 374 F.3d at 166-67 (quotations and citation omitted); *accord McNulty*, 137 F.3d at 738. "A court need not consider all three criteria, however, because its determination that the default was willful is sufficient to support the denial of a motion to vacate." *Jaramillo v. Vega*, 675 F. App'x 76 (2d Cir. Jan. 31, 2017) (summary order) (citing *Bobrow Greenapple & Skolnik v. Woods*, 865 F.2d 43, 44 (2d Cir. 1989) (per curiam)); *see also United States v. Chesir*, 526 F. App'x 60, 62 (2d Cir. June 6, 2013) (summary order) ("[T]he district court's identification of willfulness would, by itself, support its refusal to vacate the challenged default judgment. . . ."); *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. July 16, 2013) (summary order) ("Of the[] [three] factors, willfulness carries the most weight. Though each factor is to be considered, a 'default should not be set aside when it is found to be willful.'" (quoting *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991))).

A. Willfulness

Since "[t]he basic purpose of default judgment is to protect parties from undue delay-harassment[,]" *Green*, 420 F.3d at 108 (quotations and citation omitted), the Second Circuit has "held that willfulness in the context of a judgment by default requires something more than mere negligence, such as egregious or deliberate conduct, although the degree of negligence in precipitating a default is a relevant factor to be considered." *Id.* (quotations and citation omitted); *see also McNulty*, 137 F.3d at 738 ("We have interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless.")

"On the other hand, the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *McNulty*, 137 F.3d at 738; *accord Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015). "Thus, defaults have been found willful where, for example, an attorney failed, for unexplained reasons, to respond to a motion for summary judgment[;] . . . or failed, for flimsy reasons, to comply with scheduling orders[;] . . . or failed, for untenable reasons, after defendants had 'purposely evaded service for months,' to answer the complaint[;] . . . or failed, for incredible reasons, to appear for a scheduled pretrial conference and unaccountably delayed more than 10 months before moving to vacate the ensuing default." *McNulty*, 137 F.3d at 738-39 (citations omitted). Contrary to Moreno's contention, (*see* Moreno Mem. at 6), neither a strategic decision to default, nor bad faith, must be demonstrated for a court to find that a default was willful. *See Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998) (holding that bad faith is not "a predicate to a determination of willfulness" and that "it is sufficient that the defendant defaulted deliberately."); *accord Bricklayers*, 779 F.3d at 187.

Moreno attempts to explain only his default in filing an answer in this action; he does not proffer any explanation for his failure to file a claim. Moreover, the initial explanation proffered for his default is "flimsy," at best:

> "A Conference was held on May 18, 2017. Mistakenly an attorney who no longer is with the undersigned's firm, had advised that Mr. Moreno's action bearing Docket No.: 16-cv-05865 [the underlying action] was stayed, due to the pendency of the within Declaratory [sic] Judgment Action. This attorney was supposed to file an Answer to the claims of the Petition."

(Moreno Mem. at p. 1; *see also Id.* at 6 ["[Moreno's] sole reason for defaulting on this claim is because an attorney, who is no longer with the firm, mistakenly filed an Answer to the wrong docket"]). The first sentence is an accurate statement of fact. With respect to the second sentence, the former associate of D&D was not "mistaken[]" in his advice: the underlying action was, in fact, stayed by the Order Restraining Suits issued in this action. Moreno provides no explanation for how that has any bearing upon his failure to file a claim or answer in this action. The last sentence omits any reason for the former associate's alleged failure to file an answer in this case; and Moreno does not submit an affidavit from that former associate, or anyone associated with D&D, in support of that explanation.

Moreover, the docket in the underlying action indicates that the answer incorrectly filed by D&D, on behalf of Moreno, in the underlying action, (Moreno Mem. at pp. 1 and 6), was electronically filed by Mr. Dell, a principal of D&D. (*See* DE 9 in 16-cv-5865). In any event, nowhere does Moreno, or D&D, provide any explanation for their failure to timely file a claim in this action pursuant to Supplemental Rule F(5). *See generally In re Beauvois*, 2010 WL 5055833, at * 2 ("Courts have found that Supplemental Rule F(5) requires that a claim be filed first and prior or contemporaneously with an answer being filed. Simply filing an answer is not

sufficient because a person who has not presented a claim for damages may not then answer the limitation claim and contest the allegations therein." (citing cases)).

To the extent Moreno is attempting to blame the unidentified former associate of D&D for all of the purported neglect that led to the entry of a default judgment in this action, the Court notes that a different attorney, *i.e.*, Mr. Dean, appeared for D&D, on behalf of Moreno, at the status conference on July 12, 2017. Thus, it was Mr. Dean, a principal of D&D, who was notified, after the answer had been mistakenly filed in the underlying action, of Moreno's default in this action and of the briefing schedule for petitioners' motion for a default judgment against him. (*See* DE 7).

Furthermore, although Moreno denies receiving notice via ECF when the motion for default judgment was filed in this action,[7] (*see* Moreno Mem. at pp. 1 and 6), a copy of petitioners' motion for a default judgment was served upon D&D, to the attention of Mr. Dell and Mr. O'Malley, by mail pursuant to Fed. R. Civ. P. 5(b). (*See* DE 8 at p. 2 and DE 9-1 [Ex. A]). Moreno does not dispute such service, and submits no evidence to rebut petitioners' affidavit of service. Moreover, as indicated above, Mr. Dean clearly knew of the briefing schedule for petitioners' default judgment motion and could have easily discerned that the motion had been filed in accordance therewith from even a cursory review of the docket.

In addition, Ms. Sinnott, an associate of D&D, appeared on behalf of Moreno at the status conference in the underlying action on April 12, 2018 and was informed that a default judgment had been entered in this action. (*See* DE 10 in 16-cv-5865). Thus, Moreno's counsel was clearly aware of the entry of a default judgment against him in this action for more than nine (9) months before seeking any relief therefrom, and offers no explanation for such delay.

---

[7] D&D did not receive ECF notifications because they never filed a claim, answer or notice of appearance on behalf of Moreno in this action prior to the entry of the default judgment.

Moreno does not deny that he received the complaint, the Order Restraining Suits or the Notice; nor could he since he was granted an extension of time to file a claim and answer in this action during the initial pretrial conference at which his counsel was present. In addition, Moreno does not deny that his counsel received notice of his default and the briefing schedule for petitioners' motion for a default judgment in this action, including the dates by which the motion and any opposition thereto were to be served; nor does he contend that his failure to file a claim in accordance with the Notice, Supplemental Rule F and the Court's order granting him an extension of time to do so, or to oppose petitioners' motion for a default judgment in accordance with the Court's briefing schedule, were due to circumstances beyond his control. Moreno's inaction and outright disregard for this litigation and for court notices, orders and rules, *i.e.*, his unexplained failure to file a claim in this action, even after being granted an extension of time to do so; his specious excuse for the incorrect filing of an answer in the underlying action; his spurious and inconsistent excuses for the failure to oppose or respond in any way to petitioners' motion for a default judgment; and his unaccountable delay in seeking the vacate the default judgment entered in this action for more than nine (9) months after his counsel received clear notice of its entry, warrants a finding that his default in this action was willful. *See, e.g. Bricklayer*, 779 F.3d at 187; *McNulty*, 137 F.3d at 739; *United States v. Conolly*, 694 F. App'x 10, 13-14 (2d Cir. May 25, 2017) (summary order) (finding that the claimant's failure "to abide by the plain language of Supplemental Rule G and the notice provided to him by the Government" was not excusable neglect).

Moreover, where, as here, "the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." *McNulty*, 137 F.3d at 740; *see, e.g.*

*PMJ Capital Corp. v. Bauco*, No. 16-cv-6242, 2018 WL 485973, at * 3 (S.D.N.Y. Jan. 18, 2018), *appeal withdrawn*, No. 18-502, 2018 WL 238616, at * 1 (2d Cir. Apr. 11, 2018). Thus, based upon the egregiousness of his counsel's neglect in this action and the lack of a satisfactory explanation therefor, and the absence of any indication of diligent efforts by Moreno to monitor his counsel's handling of this case or "to prevent the default's occurrence," *McNulty*, 137 F.3d at 740, the Court finds that Moreno's default in this action was willful.

B. Meritorious Defense

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, . . . but he must present evidence of facts that, if proven at trial, would constitute a complete defense[.]" *McNulty*, 137 F.3d at 740 (quotations and citations omitted); *accord State St. Bank*, 374 F.3d at 167; *Chesir*, 526 F. App'x at 62-63. "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993); *see, e.g. Bricklayers*, 779 F.3d at 187 (holding that conclusory denials are insufficient to satisfy the defendant's "burden of offering evidence sufficient to establish a complete defense."); *McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. Dec. 15, 2015) (summary order) (finding that a defense which "is made only in conclusory terms and is not accompanied by any supporting evidence," is without merit). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil*, 10 F.3d at 98; *accord State St. Bank*, 374 F.3d at 167. "This standard

14

applies regardless of whether there has been an evidentiary hearing or an opportunity for discovery." *State St. Bank*, 374 F.3d at 167.

Moreno merely recites the nature of his claim against petitioners in the underlying action and the affirmative defenses asserted in his answer filed in that action; and conclusorily alleges, *inter alia*, that petitioners were negligent and "wholly and/or partially liable" for the Accident.[8] (*See* Moreno Mem. at 7-9). However, Moreno submits no evidence or facts in support of those assertions; nor does he submit any evidence, or even a theory, of petitioners' fault in the Accident. Accordingly, Moreno's assertions "amount[] to little more than conclusory denials," *Green*, 420 F.3d at 109-110, and are insufficient to show the existence of a meritorious defense or claim, particularly given the unrebutted facts and evidence presented by petitioners in opposition to Moreno's motion indicating that his affirmative defenses and claims against them are not likely to be successful.

C. Prejudice

Moreno has not shown a lack of prejudice to petitioners if the default judgment entered in this action were vacated. *See Green*, 420 F.3d at 110 ("Defendants offered no evidence suggesting that the [plaintiff] would not suffer prejudice. . . .") Contrary to Moreno's speculative contention that "the ability for Petitioners to pursue a claim has not been hindered by the entry of default judgment because had the inadvertent mistake not been made by [D&D] which led to the entry of the default judgment by the Court, the parties would likely still be engaged in

---

[8] Indeed, in his reply, Moreno does not even address, much less attempt to rebut, the arguments and evidence presented by petitioners in their opposition to his motion, indicating that he is wholly at fault for the Accident. Rather, Moreno merely reiterates, verbatim, the nature of his claim against petitioners in the underlying action, and conclusorily contends that his "multiple meritorious Affirmative Defenses develop questions of fact for which the undersigned believes, would refute the claims present in Petitioner's Motion for Declaratory [sic] Judgment that was granted, solely because no opposition was filed." (Reply at p. 8).

15

discovery," (Moreno Mem. at 10; Reply at p. 9), it is more likely that discovery would have been completed, and indeed this entire case resolved, had Moreno filed a timely claim by the April 17, 2017 deadline in the Notice, or even the July 2, 2017 extended deadline. The parties were given only seven (7) months to complete discovery in the underlying action and there is no reason why this Court would give the parties any more time to complete discovery in this action. Hence, had Moreno not defaulted in this action, discovery would have been completed by no later than December 18, 2017, *i.e.*, seven (7) months from the date of the initial pretrial conference in this action; if not sooner since the parties had already engaged in discovery for three (3) months in the underlying action before it was stayed by the Order Restraining Suits. With discovery complete, the entire case would probably have been resolved, either on motion, at trial or by settlement, within the following year.

Moreover, since the Accident occurred on July 20, 2014, more than five (5) years ago, it is reasonable to believe that discovery has been rendered more difficult by the delay caused by Moreno's default, *e.g.*, due to fading memories, unavailable witnesses, etc. *See, e.g. Green*, 420 F.3d at 110 (indicating that delays which, for example, "thwart plaintiff's recovery or remedy, . . . result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion," may be sufficient to establish prejudice).

In any event, "[a]n absence of prejudice to the nondefaulting [sic] party would not in itself entitle the defaulting party to relief from the judgment." *McNulty*, 137 F.3d at 738. Since "[c]ourts have an interest in expediting litigation, and abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct, . . . the district court . . . has discretion to deny the motion to vacate if it is persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense." *McNulty*, 137 F.3d at 738

(quotations, alterations and citation omitted); *see also State St.*, 374 F.3d at 174 ("We need not evaluate whether the vacatur of the default judgment would subject [the plaintiff] to prejudice because we have concluded that the defendants failed to establish a meritorious defense; the absence of such a defense is sufficient to support the district court's denial of the defendants' . . . Rule 60(b) motion."); *Commercial Bank of Kuwait v, Rafidain Bank*, 15 F.3d 238, 244 (2d Cir. 1994) (holding that a strong showing of prejudice is not required where the willfulness of the default and the absence of meritorious defenses are established).

Accordingly, for the reasons set forth above, Moreno's motion to vacate the default judgment in this action pursuant to Rule 60(b) of the Federal Rules of Civil Procedure is denied in its entirety.

III.  CONCLUSION

For the foregoing reasons, Moreno's motion to vacate the default judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure is denied in its entirety.

SO ORDERED.

                                        /s/ *Sandra J. Feuerstein*
                                        SANDRA J. FEUERSTEIN
                                        United States District Judge

Dated: September 24, 2019
       Central Islip, New York